

FILED
IN OPEN COURT
March 1, 2007
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

-vs-                      Case No. 6:04-cr-111-Orl-31JGG

AARON ERIC WILLIAMS

---

**MEMORANDUM SENTENCING
OPINION ON REMAND**

On May 3, 2005, Aaron Eric Williams came before me for sentencing.[1] At that proceeding, the government took its usual position that anything less than a guideline sentence would be unreasonable, notwithstanding the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). I found that position troubling and engaged the prosecutor in a colloquy concerning judicial sentencing discretion. I eventually stated my belief that "the [Supreme] Court has not only given me the discretion but the obligation to consider Mr. Williams as an individual in the context of the factors set forth in 18 U.S.C. Section 3553, and I'm going to do that." (Sentencing hearing transcript at 23).[2]

---

[1] I have never before written an opinion in the first person. However, because in this case the Court of Appeals saw fit to interpret my inner thoughts, it seemed appropriate to do so here.

[2] I note that, last week, while arguing on behalf of the Department of Justice before the Supreme Court in the case of *Rita v. United States*, Case No. 06-5754, Deputy Solicitor General Michael Dreeben said that the *Booker* decision "necessarily implies that a judge does have a certain amount of freedom in an advisory guidelines system to disagree with what the Sentencing Commission has found." (*Rita* transcript at 34-35). In other words, the government concedes that under an advisory guidelines system, the trial judge necessarily has discretion to rule that a sentence within the guidelines is not consistent with an individualized application of the Section 3553(a) factors.

I then reviewed the sentencing factors as they pertained to Mr. Williams and the criminal conduct for which he was being held accountable. In considering the nature and circumstances of the offense, I shared defense counsel's "concern about the discrepancy between powder and crack cocaine,"[3] but concluded that the offense was serious. (Sentencing hearing transcript at 24). After reviewing all of the statutory sentencing factors, I imposed a below-guideline, but nevertheless harsh, sentence of 204 months.

In order to further elucidate my sentencing rationale, I issued a memorandum sentencing opinion on May 5, 2005 (Doc. 48). The crux of that opinion concerned the government's "effort to completely usurp the Court's sentencing function" and the Court's duty to exercise its discretion by considering the guidelines on an advisory basis in the context of the Section 3553(a) factors. (Doc. 48 at 3). The crack-powder disparity was not a significant factor in my consideration of the sentencing factors. Indeed, the issue was relegated to a footnote. (Doc. 48 at 6, n.8). Rather, I focused on the compounding effects of the Chapter 4B enhancements which, I concluded, produced a guideline sentence much greater than that necessary to comply with the statutory purposes of sentencing.

On appeal, the Eleventh Circuit reversed, holding that the crack-powder disparity is an impermissible sentencing consideration, and that this Court erred in mitigating Williams' sentence based on its personal disagreement with the 100:1 ratio. *United States v. Williams*, 456 F.3d 1353 (11th Cir. 2006) ("*Williams I*"). The Circuit Court found similar error in this Court's mitigation of

---

[3] Generally speaking, the guidelines treat 1 gram of crack cocaine as equivalent to 100 grams of powder cocaine for sentencing purposes. This 100:1 ratio is commonly referred to as the "crack-powder disparity."

Williams' sentence based on disagreement with the career offender guideline provision and remanded for resentencing based on the individual facts and circumstances set forth in Section 3553(a).[4]

On December 13, 2006, the Eleventh Circuit issued an *en banc* order, denying rehearing in this case. *United States v. Williams*, 472 F.3d 835 (11th Cir. 2006) ("*Williams II*"). In her concurring opinion, Judge Black distinguished between sentences based on case-specific, individualized application of the 3553(a) factors and those based on a "categorical rejection of Congress's clearly expressed sentencing policy. . . ." *Id.* After considering prior precedent, including the sentence imposed by this Court upon a similarly named defendant in *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006), Judge Black reasoned that the reversal in *Williams I* was because this Court's sentence varied from the guidelines due "overwhelmingly" to a "categorical" rejection of clearly expressed Congressional policy, rather than because of case-specific, individualized application of the Section 3553(a) factors. *Williams II*, 472 F.3d at 840. Indeed, I was accused of merely having "couched" some of my rationale in the Section 3553(a) factors – presumably because I lacked the courage or the honesty to admit why I was not adhering to the guidelines.

---

[4]The Court noted that a below-guidelines sentence in a crack-cocaine case may be reasonable, so long as it reflects the case-specific factors in Section 3553(a). *Williams*, 456 F.3d at 1369. The Court expressed no opinion as to what sentence should be imposed upon remand. *Id.* at 1372.

It is true that I disagree with the 100:1 crack-powder ratio.[5] However, as reflected in the transcript of the sentencing hearing and this Court's memorandum opinion, such disagreement was not an overwhelming factor in Mr. Williams' sentence and has not led me to a categorical rejection of Congressional policy. Did I consider the crack-powder disparity in determining Mr. Williams' sentence? The answer is yes, because it bears upon the nature of the offense, as stated in my memorandum opinion.[6] Was it an overwhelming factor? Absolutely not.[7] Had it been an important factor, I would have said so, and would not have relegated the subject to a footnote. Did I categorically reject Congressional sentencing policy? The answer is no. Had I done so, I would have sentenced Mr. Williams as if he had sold powder cocaine, or I would have adopted a different

---

[5]I am not alone in this regard. Many courts, commentators and the Sentencing Commission itself have criticized this disparity as irrational and totally unwarranted. *See, e.g.*, Louis Oberdorfer, *Perspectives on the Federal Sentencing Guidelines and Mandatory Sentencing: Lecture: Mandatory Sentencing: One Judge's Perspective*, 40 Am. Crim. L. Rev. 11, 16-17 (Winter 2003); *and* U.S. SENTENCING COMM'N. COCAINE AND FEDERAL SENTENCING POLICY 91-93 (May 2002) (stating that "the Commission firmly and unanimously believes that the current federal cocaine sentencing policy is unjustified and fails to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 Act" because, among other things, the 100:1 ratio "greatly overstates the relative harmfulness of crack cocaine.").

[6]The D.C. Circuit Court of Appeals recently held that it was reversible error for a District Court to *fail* to consider the crack-powder disparity when that issue was raised by the Defendant. *U.S. v. Pickett*, 2007 WL 2445937 (D.C. Cir. 2007). In reaching this decision, the appellate court carefully considered (and rejected) the notion that the 100:1 ratio reflected the will of Congress. *Id.* at *7.

[7]*Compare United States v. Hamilton*, 428 F.Supp.2d 1253 (M.D.Fla. 2006) (Presnell, J.) (analyzing history of crack-powder disparity, concluding that the disparity is arbitrary and discriminatory and results in unjust sentences that promote disrespect for the law).

ratio (*e.g.*, 20:1), as other courts have done.[8] Yet, the Court of Appeals, having "thoroughly reviewed the record," determined that I had only paid lip service to the statutory factors.[9]

The import of *Williams I* and *Williams II* is that any criticism of the guidelines when considering a sentence will be taken as impinging on the prerogative of Congress and trumping the statutory factors actually considered by the trial court. The natural result of this will be to shield the guidelines from judicial scrutiny and to stifle the development of sentencing law. The Sentencing Commission will receive little meaningful input from district judges who, being on the front lines of sentencing issues but without a personal or professional stake in their outcome, are among those best able to provide objective, informed analysis.

Such an outcome seems contrary to the intent of Congress. Even the proponents of the Sentencing Reform Act envisioned that judges would play an active role in the development of the common law of sentencing.[10] The drift toward mandatory guidelines, of course, inhibited such development. Now, notwithstanding *Booker*, it seems as though we have come full circle.

---

[8] *See, e.g., United States v. Judon*, 472 F.3d 575, 586 (8th Cir. 2007) (holding that the district court abused its discretion when it rejected the 100:1 ratio and instead employed a 20:1 ratio).

[9] It is difficult to understand how or why the Court of Appeals concluded that the sentencing rationale I set out was mere subterfuge. I thought perhaps something was said during oral argument on appeal that influenced the panel's judgment. So I requested a copy of the transcript from the Court of Appeals. My request was denied. Unlike the United States Supreme Court and most of the other courts of appeal, the United States Court of Appeals for the Eleventh Circuit maintains the transcripts of these public hearings in secret.

[10] "In particular, the Senate Report stresses that the articulation and review of decisions to depart from the guidelines will 'provide case law development of the appropriate reasons for sentencing outside the guidelines [and,] in turn, will assist the Sentencing Commission in refining the sentencing guidelines.'" Douglas Berman, *Symposium: A Common Law for this Age of Federal Sentencing: The Opportunity and Need for Judicial Lawmaking*, 11 Stan. L. & Poly. Rev. 93, 98 (Winter 1999) (quoting Sen. Rep. 98-225).

Apparently the guidelines are sacrosanct and beyond the court's critical review – even if the court does not act upon that criticism. It is certainly easier for a trial judge to calculate a guideline sentence than to spend time scrutinizing its foundation. But I do not think that such a system is most likely to produce justice, and I find it hard to believe that anyone in Congress would think so, either.

So what am I to do? I am instructed to resentence Mr. Williams using only individualized consideration of the statutory factors. Am I to (somehow) ignore the widely held belief that the crack-powder disparity is inherently unjust; or may I subconsciously consider it in relationship to the offense conduct so long as it does not overwhelm my subjective judgment? And what about the compounding effect of the Section 4B enhancements? Based on my experience in sentencing hundreds of individuals, I believe that Section 4 enhancements often produce grossly unjust results. Should I ignore that well-founded belief and thereby subvert my own sense of justice in order to purify my consideration of the statutory factors? Is that even humanly possible?

I don't know. But I am obliged to honor the Circuit Court's mandate, and I will do so to the best of my ability.

It is now well established that sentencing is a two-step process. *See United States v. Crawford*, 407 F.3d 1174, 1178-79 (11th Cir. 2005). First, the Court must determine the applicable guideline score, resolving any material factual disputes while considering pertinent policy statements issued by the Sentencing Commission. Second, the Court must consider all of the Section 3553(a) factors, including the guideline sentencing range. The ultimate goal is to impose a sentence that is sufficient, but not greater than necessary to comply with the statutory purposes set forth in 18 U.S.C. § 3553(a)(2).

Because the guidelines are now only advisory, and because a guideline sentence is not presumptively reasonable in this circuit, it follows that a reasonable sentence may fall above or below the guideline range, so long as it comports with the Section 3553(a) factors. *United States v. Talley*, 431 F.3d 784 (11th Cir. 2005).

**Williams' Guideline Score**

Having sold 34.8 grams of crack cocaine to a government agent, Williams had an offense level score of 28. Based on a criminal history score of 20, Williams fell within criminal history category VI. A score of 28VI produces a guideline sentencing range of 140-175 months. However, because Williams qualifies as a career offender under U.S.S.G. 4B1.1,[11] his guideline score is enhanced to offense level 34, producing a guideline range of 262-327 months. Moreover, because of an additional enhancement under 21 U.S.C. § 851(b), his score is increased to offense level 37, with a guideline range of 30 years to life in prison.

Thus, for purposes of sentencing, the guidelines suggest a sentence of 30 years to life for this crime.

**The 3553(a) Factors**

(1)   <u>The nature and circumstances of the offense and the history and characteristics of the Defendant.</u>

The nature of the offense and characteristics (history) of the defendant are captured in a general way by the guidelines.[12] However, these specific statutory sentencing factors require a separate individualized inquiry as well.

---

[11] Williams was scored using the 2004 edition of the Guidelines Manual.

[12] The guidelines are supposed to lessen sentencing disparity by providing a benchmark against which to measure individual circumstances. However, sentencing disparity is a natural byproduct of the art of judging, and should not be disparaged when viewed in its proper context.

As noted in my prior opinion, at the time of sentencing Williams was a 29-year-old male who had engaged in a consistent pattern of criminal conduct since age 16. He had a ninth-grade education and marginal employment skills. Prior to his arrest, he used alcohol and cannabis daily, as well as cocaine and ecstacy on occasion. (PSR at ¶73). In sum, Williams was a petty street-level drug user/dealer. His history of violence is limited to a couple of incidents of domestic battery.

The offense here involves three separate sales of crack cocaine to a confidential source working for the DEA:

|       | 4.6 grams on 4/23/03 for  | $ 760   |
|-------|---------------------------|---------|
|       | 10.1 grams on 5/29/03 for | $1,000  |
|       | 20.1 grams on 7/26/03 for | $1,380  |
| Total | 34.8 grams                | $3,140  |

Thus, over a four-month period, Williams sold a modest amount of crack cocaine for a total sale price of $3,140.00.

(2)   The need for the sentence imposed

(A)   **To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

The sentencing of a defendant (at least since *Booker*) is not a mechanical exercise based purely on objective criteria. Rather, these sentencing factors call for the use of subjective judgment, *i.e.*, the exercise of judicial discretion based on consideration of the human condition and the vagaries of human conduct.

In essence, these factors express the "just desserts" concept of justice. As stated in the Senate Report, "It is another way of saying that the sentence should reflect the gravity of the defendant's conduct." Sen. Rep. 98-225 at 75 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3258. The sentence should thus reflect both the public's interest in the harm done and the defendant's interest in avoiding an unreasonably harsh sentence under all the circumstances of the case. *Id.*

Moreover, one of the basic tenets of the sentencing guidelines is to seek proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity. U.S.S.G. 1A1.1. Here, a guideline sentence is at complete odds with this goal. For example, a 30-year sentence equals or exceeds the <u>maximum</u> statutory punishment for the following offenses: sexual abuse, 18 U.S.C. § 2242; sexual exploitation of children, 18 U.S.C. § 2251; enticement into slavery, 18 U.S.C. § 1583; torture, 18 U.S.C. § 2340A; and seditious conspiracy, 18 U.S.C. § 2384.[13] And Congress has determined that a person convicted of producing and threatening to use smallpox virus against the United States (18 U.S.C. § 175c) may be sentenced to as little as 25 years, while a person convicted of kidnapping (18 U.S.C. § 1201) or bombing a government building (18 U.S.C. § 2332f) faces no mandatory minimum sentence at all.

In sum, Williams is a street-level dealer of crack cocaine. He is not a kingpin, managing a large-scale drug enterprise. While the sale of crack cocaine is a serious offense, severity is a relative concept, and a guideline sentence of 30 years would be grossly disproportionate to the

---

[13]The undersigned notes that recognition of these disparities is not intended to be a categorical rejection of Congress's prerogative to establish disparate maximum statutory sentences for different crimes.

seriousness of this offense. It would not provide just punishment. Indeed, in this case, I find that it offends the very notion of justice. As such, it would obviously not promote respect for the law. These factors therefore weigh heavily against the imposition of a guideline sentence.

    **(B)    To afford adequate deterrence to criminal conduct.**

This factor concerns the concept of sending a message to the community at large, advising other would-be offenders of the consequences of their actions. Presumably, the threat of punishment will deter others from engaging in similar criminal conduct. But how much deterrence is enough? What is the correlation between the length of one person's sentence and the willingness of others to risk receiving it? I am not aware of any empirical analysis that answers these questions. So again, subjective judgment is inescapable. Also, it seems appropriate to consider the deterrence factor in light of the seriousness of the offense: that is, the deterrent effect of a harsh sentence should be reserved for those serious crimes where society's need for protection is the greatest.[14]

Mandatory minimum sentences already provide substantial deterrence in the area of drug-related crimes. For example, in this case, Williams is subject to a mandatory minimum sentence of ten years for the sale of a relatively small amount of cocaine. 21 U.S.C. § 841(b)(1)(B)(viii). How much more deterrence is necessary, and at what point does the sentence become unduly harsh? In this Court's opinion, a sentence above the mandatory minimum is appropriate, but a guideline sentence is not.

---

[14]The Senate Report finds this factor to be particularly important in the area of white collar crime. Sen. Rep. 98-225 at 76 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3259.

**(C) To protect the public from further crimes of the defendant.**

This factor is unique to the particular defendant being sentenced, and relates to the problem of recidivism. Thus, the longer one spends in prison, the less opportunity he will have to commit other crimes during or after his period of incarceration. Williams' criminal history weighs in favor of a relatively harsh sentence, because his prior punishments have not deterred him from continued criminal conduct.

**(D) To provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Williams needs educational and vocational training as well as drug treatment. Under the circumstances, the most effective manner of providing these services (at least initially) is by way of incarceration.

**(E) Other sentencing considerations**

Considering the remaining Section 3553(a) factors, the only kind of sentence available here (factor 3) is incarceration. Factors 4 and 5 involve the guidelines and policy statements issued by the Sentencing Commission, which have already been addressed. Also, factor 6 states the underlying purpose of the guidelines: to avoid unwarranted sentencing disparities. Factor 7, restitution, is not applicable here.

**Conclusion**

Based upon a case-specific, individualized application of the Section 3553(a) factors, including the guidelines score, and accepting at face value the wisdom of the advisory guidelines, I conclude that a reasonable sentence in this case is 204 months.

**DONE** and **ORDERED** in open court this 1st day of March, 2007.

> GREGORY A. PRESNELL
> UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Aaron Eric Williams